IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| BAUTISTA CAYMAN ASSET COMPANY<br>Plaintiff<br>vs<br>F&A INVESTMENT, INC.; P. GIANT OUTLET & LIQUIDATION CENTER, CORPORATION; FURNITURE & CARPET WORLD CORP.; FERNANDO JESUS PAONESSA-LOPEZ; ANNETTE MARIE BRAFETTE MULINELLI<br>Defendants | CIVIL 15-2798CCC |

**OPINION AND ORDER**

On November 10, 2015, Bautista Cayman Asset Company ("Bautista" or "Plaintiffs") filed a Complaint against F&A Investment, Inc. ("F&A Investment"), P Giant Outlet & Liquidation Center, Corporation ("P Giant Outlet"), Furniture & Carpet World Corp. ("Furniture & Carpet"), Fernando Jesús Paonessa-López ("Paonessa-López"), and Annette Marie Brafette Mulinelli ("Brafette") (collectively "Defendants"), for collection of monies and the foreclosure of mortgages and other collateral. Under certain loan and financing agreements (as defined below), Bautista requested the payment of a total amount of $5,615,473.54, which is composed of $4,852,861.15 in principal, $749,430.04 in accrued interests and $13,182.35 for late fees as of August 31, 2015, plus the amount of $1,280.62 per diem for interest and any additional amount incurred in costs and fees for each day from August 31, 2015 through the date of the payment in full of all amounts due under the loans. In the absence of payment in full by Defendants, Bautista requested that the Court order the

foreclosure of all of the non-real estate collateral under the loan and collateral documents (as defined below).

On March 29, 2016, the Clerk of this Court entered default against defendants P Giant Outlet, Furniture & Carpet and Brafette, and on May 3, 2016 against defendant F&A Investment, for their failure to plead or otherwise answer the Complaint. On April 27, 2016, Paonessa-López filed an answer to the Complaint. The Court entered Partial Judgment against defendants F&A Investment, P Giant Outlet, Furniture & Carpet and Brafette on February 28, 2017.

Before the Court is Bautista's Motion for Summary Judgment (**d.e. 30**) filed on October 31, 2016. On March 11, 2017, Paonessa-López filed a Motion to Consent Entry of Summary Judgement (d.e. 35) wherein he "consents that judgment be entered against him." Plaintiff has met and complied with all its obligations in enforcing its contractual remedies, and is entitled to collect on the amounts owed on the Financing Agreements as of right and defendant Paonessa-López has consented to entry of summary judgment. For the reasons discussed below, the Motion for Summary Judgment (**d.e. 30**) is GRANTED.

I.   **UNCONTESTED MATERIAL FACTS**

Plaintiff supported its motion with a statement of material facts. The relevant facts are set forth below:

1. F&A Investment executed a loan agreement ("Initial Loan Agreement") with Doral Recovery II, LLC ("Doral") on February 26, 2010, in the principal amount of $4,203,388.72, identified under loan number 3002003356.

2.	On October 31, 2013, F&A Investment, P Giant Outlet, Corporation, Furniture & Carpet, and Paonessa-López executed an Amended, Consolidated and Restated Loan Agreement (the "Financing Agreements") with Doral.

3.	Pursuant to the Financing Agreements, the Initial Loan Agreement was amended to reflect the bifurcation of the existing loan, number 300020003356, into two separate loans: (1) a senior loan for the principal amount of $4,203,888.72 ("Loan A"); and (2) a junior loan for the principal amount of $674,339.63 ("Loan B") (collectively referred to as the "Loans").

4.	In the event of any default with the terms, obligations or covenants of the Financing Agreements, Doral may terminate its obligations under the Financing Agreements and accelerate in full or in part any and all of F&A Investment, P Giant Outlet, Furniture & Carpet, and Paonessa-López's obligations or indebtedness under the Financing Agreements and the Loans would become immediately due, owing, and payable.

5.	The principal amounts due under the Loans, which were duly endorsed to Bautista, are further evidenced by two promissory notes issued by F&A Investment to the order of Doral: (a) a note in the amount of $4,203,888.72; and (b) a note in the amount of $674,339.63.

6.	To secure the obligations under the Financing Agreements, on October 31, 2013, F&A Investment executed an Amended and Restated Mortgage Notes Pledge and Security Agreement (the "Mortgage Notes Pledge and Security Agreement") with Doral and granted and pledged to Doral first priority liens over the real property (the "Real Property 28,146") with the following legal description:

    URBAN: Tract of land located in the Sabana Abajo Ward of the Municipality of Carolina, Puerto Rico, identified as lots number two (#2) and two-A (#2-A) on the inscription plan of Castellana Gardens Development, now known as Sabana Industrial Park, with an area of TEN THOUSAND ONE HUNDRED NINETY SIX POINT TWO THOUSAND EIGHT HUNDRED FORTY TWO (10,196.2842) SQUARE METERS, with the following geometric description: starting at the Southwestern corner of the lot, proceed along with the boundary with Sabana Llana Main Street with a bearing of North fifty six (56) degrees sin (6) minutes twenty one (21) seconds for a distance of one hundred eight point three hundred forty six (108.346) meters, thence along the boundary with lots number three (#3) and three-A (#3-A) of the same development with a bearing of North twenty eight (28) degrees thirty (30) minutes twenty seven (27) seconds for a distance of eighty five point four hundred ninety seven (88.897) meters and with a bearing of South sixty six (66) degrees fifty eight (58) minutes seven (7) seconds West for a distance of nineteen point four hundred forty three (19.443) meters, thence along the boundary with lots number one (#1) and one-A (#1-A) of the same development with a bearing of South twenty eight (28) degrees twenty nine (29) minutes twenty six (26) seconds East for a distance of one hundred three point four hundred thirty four (103.434) meters to the starting point of this description. Upon the above described land has been constructed a one story steel and masonry multipurpose industrial building.

    BUILDING: With a value of $459,370.00, as is evident from deed number 3, execute din San Juan, on June 19, 1979, before Charles P. Adams, recorded at page 102 of tome 807 of Carolina, property number 28146, 10th recordation.

    The property number 28,146 is recorded at page 222 of volume 807 of Carolina, First Section of Carolina, Registry of the Property of Puerto Rico.

    7.    The first priority and perfected mortgage notes and mortgages deeds pledged to Doral over Real Property 28,146, which were duly endorsed to Bautista, are the following:

    (a)    First priority and perfected mortgage note and mortgage deed in the amount of $3,825,000.00 over Real Property 28,146, each dated September 17, 2002.

CIVIL 15-2798CCC                5

      (b)    Second priority mortgage note and mortgage deed in the amount of $875,000.00 over Real Property 28,146, each date August 30, 2006.

    8.  Pursuant to the Mortgage Notes Pledge and Security Agreement, F&A Investment granted to Doral a collateral assignment of all of the rents, income, and revenues derived from any and all of the lease agreements from Real Property 28,146.

    9.  On October 31, 2013, F&A Investment and P Giant Outlet subscribed a "Notice of Assignment." Through the Notice of Assignment, F&A Investment assigned and pledged all of its rights to Doral under a certain lease agreement between F&A Investment and P Giant Outlet, dated August 9, 2013. That same date, P Giant Outlet also executed a "Tenant Estoppel Certificate" in favor of Doral and F&A Investment.

    10.  On November 5, 2013, F&A Investment filed a UCC Financing Statement, Form UCC1, with the Department of State of Puerto Rico through which it pledged to Doral the personal property described therein.

    11.  Paonessa-López and Braffette Mulinelli executed a Guarantee on February 26, 2010 to jointly and severally guarantee to Doral the payment of all of the obligations under the Financing Agreements.

    12.  On October 31, 2013, defendants P Giant Outlet, Paonessa-López, Furniture & Carpet, all executed Continuing and Unlimited Guarantees to jointly and severally guarantee to Doral the payment of all of the obligations under the Financing Agreements.

    13.  The Mortgage Notes Pledge and Security Agreement, the Mortgage Notes and Deeds, the Notices of Assignment, the Tenant Estoppel Certificates

and the UCC Financing Statement are collectively referred to as the "Collateral Documents" and the collateral pledged therein, along with Real Property 28,146, and the Continuing and Unlimited Guarantees, collectively, the "Collateral".

14. All the obligations under the Financing Agreements were duly endorsed to Bautista.

15. F&A Investment defaulted on its obligations under the Financing Agreements, as it failed to pay the amounts due therein under its terms.

16. As a result of Defendants defaults, Bautista declared all of the obligations under the Loans immediately and automatically due, owing, and payable.

17. To date, the defendants in the present case have failed to cure the existing and continuing defaults detailed above under the Financing Agreements.

18. As of June 30, 2016, the Defendants owe still Bautista the following amounts:

(a) Under senior loan (Loan A), $5,244,526.07; of which $4,178,521.52 corresponds to principal; $1,006,153.16 corresponds to accrued interests as of June 30, 2016; $32,713.21 corresponds to late fees; $27,138.18 correspond to legal expenses and valuation expenses, as provided in the Financing Agreements and the Collateral Documents; plus the amount of $1,102.67 per diem for interest and any additional amount incurred in costs and fees under the Financing Agreements for each day from June 30, 2016 through the date of the payment in full of all amounts due under the Financing Agreements.

(b) Under junior loan (Loan B), $847,485.70; of which $674,339.63 corresponds to principal and $173,146.07 corresponds to accrued interests as of June 30, 2016; plus the amount of $177.95 per diem for interest and any additional amount incurred in costs and fees under the Financing Agreements for each day from June 30, 2016 through the date of the payment in full of all amounts due under the Financing Agreements.

## II.	RULE 56 STANDARD FOR SUMMARY JUDGMENT

The role of summary judgment in civil litigation is commonplace, "to pierce the boilerplate of the pleadings and assay the parties' proof to determine whether trial is actually required." *McCarthy v. Northwest Airlines*, 56 F.3d 313, 314 (1st Cir 1985) (citing *Wynne v. Tufts University School of Medicine*, 976 F.2d 791, 794 (1st 1992)). Thus, this "device allows courts and litigants to avoid full blown trials in unwinnable cases, thus conserving parties' time and money, and permitting the court to husband scarce judicial resources." *Id.* at 315.

Federal Rule of Civil Procedure 56(a) provides that: "[a] party seeking to recover upon a claim . . . may, at any time, after the expiration of 20 days from the commencement of the action . . . move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." The Court may grant the movant's motion for summary judgment when "the pleadings, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986); *NASCO, Inc. v. Pub. Storage, Inc.*, 29 F.3d 28 (1st Cir. 1994). "[T]he principal judicial inquiry required by Rule 56 is whether a genuine dispute as to material fact exists." Wright, Miller & Kane, *Federal Practice and Procedure* § 2725 (4th Ed.) (2017).

The procedure authorized by Rule 56 "is a method for promptly disposing of actions in which there is no genuine dispute as to any material fact or in which only a question of law is involved." *Id*. at § 2712. In order to grant

summary judgment, the trial court must determine if there are any "material" factual issues which are identified depending on the substantive law that should be resolved and also, whether such issues are also "genuine." *Anderson*, 477 U.S. at pp. 247-248.

A "material issue" is one that affects the outcome of the litigation; therefore, if a factual issue is not relevant to the resolution of the controlling legal issues, summary judgment should be granted. *Pignons S.A. de Mecanigne v. Polaroid Corp.*, 657 F.2d 484 (1st Cir. 1981); *Finn v. Consolidated Rail Corp.*, 782 F.2d 13 (1st Cir. 1986); *Molinos de Puerto Rico v. Sheridan Towing Co.*, 62 F.R.D. 172 (D.P.R. 1973). As stated by the Supreme Court, ". . . the materiality determination on a motion for summary judgment rests on the substantive law, and it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson*, 477 U.S. at 248.

When, as here, the moving party asserts that the competent evidence clearly demonstrates that it is entitled to judgment, the non-moving party bears the burden of showing the existence of some factual disagreement sufficient to defeat the motion. However, the burden is satisfied only if the cited disagreement relates to a genuine issue of material fact. *Id*. at 247-248. "In this context, 'genuine issue' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party [and] 'material' means that the fact is one that might affect the outcome of the suit under the governing law." *See United States v. One Parcel of Real Property, Etc.*, 960 F.2d 200, 204 (1st Cir. 1992). Therefore, a factual issue is material if it is relevant to the resolution of a controlling legal issue raised by

the motion for summary judgment. *U.S. Fire Ins. Co. v. Producciones Padosa, Inc.*, 835 F.2d 950, 953 (1st Cir. 1987).

In order to defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. *See Hadfield v. McDonough,* 407 F.3d 11, 15 (1st Cir. 2005) (citing, *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)). Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact. *Cadle Co. v. Hayes*, 116 F.3d 957, 960 (1st Cir. 1997). Once the party moving for summary judgement has established an absence of material facts in dispute, and that he or she is entitled to judgement as a matter of law, the "party opposing summary judgment must present definite, competent evidence to rebut the motion." *Méndez–Laboy v. Abbott Lab.*, 424 F.3d 35, 37 (1st Cir. 2005) (quoting, *Maldonado–Denis v. Castillo–Rodríguez*, 23 F.3d 576, 581 (1st Cir. 1994)). "The nonmovant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue . . . . Failure to do so allows the summary judgment engine to operate at full throttle." *Id*.; *see also Kelly v. United States,* 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence).

**III.    DISCUSSION**

**A.    <u>General Contract Law</u>**

Under Puerto Rico law, according to our Civil Code, there is a "contract from the time one or more persons agree to bind themselves with respect to

other or others, to give something or render a service." Laws of P.R. Ann., Tit. 31 § 3371 (translation ours). Article 1207 of the Civil Code prescribes the principle of freedom to contract, which permits persons to establish the contractual covenants, clauses, and conditions which they so desire, as long as they do not contravene the laws, morality or the public order. *Id.*; *De Jesús González v. A.C.*, 148 D.P.R. 255, 263-64 (1999). As a result, within the context of the aforementioned limitations, "the type of agreement that can be reached by contracting parties is only limited by the parties' imagination and their will to contract is the supreme law between them." <u>Arthur Young & Co. v. Vega</u>, 136 D.P.R. 157, 169-70 (1997) (translation ours).

In general terms, a contract designates every covenant or voluntary agreement by which proprietary legal relationships are created, modified or extinguished. *See* José Puig Brutau, *Compendio de Derecho Civil*, Vol II, at 171 (2nd ed. 1994). Specifically, however, a contract refers to a voluntary agreement between two or more persons by which relationships pertaining to the law of obligations are created, modified or extinguished. *Id.* Thus, when the will of every one of the parties acts in consideration of an interest opposite or different from the one that drives the other party, it may be stated that the contract properly exists. José Puig Brutau, *Fundamentos de Derecho Civil*, Tomo II, Vol. I, at 10 (3rd ed. 1984).

Article 1213 of the Civil Code lists the requirements of the contract and establishes that "[t]here is no contract unless the following requirements concur: (1) Consent of the contracting parties; (2) Object of the contract; (3) Cause of the obligation that is established." Laws of P.R. Ann., Tit. 31 § 3391 (translation ours). *See also Danosa Caribbean v. Santiago Metal*,

179 D.P.R. 40, 45 (2010). In order to ascertain what constitutes the object of a contract, we must respond the question "what is it that is owed?." Anything can be the object of a contract, including future things within the commerce between persons, provided, however, that they are not impossible and are determinable. Laws of P.R. Ann., Tit. 31 §§ 3421, 3422 and 3423; *San Juan Credit Inc. v. Ramírez Carrasquillo,* 113 D.P.R. 181, 185 (1982). The cause in a contract, on the other hand, points to the purpose or reason that underlies the contractual relationship. *Id.* at 185-86.

Contracts, pursuant to the Civil Code, are perfected by mere consent, and every party is bound from the time of consent not only to comply with what is expressly agreed upon, but also with the consequences that, according to their nature, are consistent with good faith, custom, and the law. Civil Code, Article 1210, Laws of P.R. Ann., Tit. 31 § 3376; *Unisys v. Ramallo Bros. Printing Co., Inc.*, 128 D.P.R. 842, 852 (1991); *Ramírez v. Club Cala de Palmas*, 123 D.P.R. 339, 345-46 (1989). In addition, it is a clearly established legal axiom that the pact and agreements made by the parties to a contract have legal force and should be fulfilled in accordance thereto. Civil Code, Article 1044, Laws of P.R. Ann., Tit. 31 § 2994; *see also García v. World Wide Entmt. Co.*, 132 D.P.R. 378, 384 (1992). Moreover, when the terms, conditions, and exclusions of a contract are clear, specific, and give no margin to ambiguities or different interpretations, they are the rule to apply. Civil Code, Article 1233, Laws of P.R. Ann., Tit. 31 § 3471; *see also Curbelo v. A.F.F.*, 127 D.P.R. 747, 760 (1991). The courts of justice, thus, cannot free a party from fulfilling what it contractually agreed to, when said contract is legal and

valid, and does not have any defects. *Constructora Bauzá v. García López*, 129 D.P.R. 579, 593 (1991).

B. **Statutory Mortgage Provisions**

One of the most common contracts in our jurisdictions is the loan agreement, whereby "one of the parties provides to the other, . . . money or some other fungible object, with the condition of returning another of the same type and amount . . . ." Civil Code, Article 1631, Laws of P.R. Ann., Tit. 31 § 4511 (translation ours). A loan agreement is a unilateral obligation which must specify the amount of money loaned and received, as well as the terms of repayment to the creditor. José R. Vélez Torres, *Curso de Derecho Civil. Derecho de Contratos*, Tome IV, Vol. II, Inter American University of Puerto Rico, Law School, at 451-55 (1997). The person who receives the money loaned becomes the owner of such money, but at the same time is obligated to repay such amount, plus the agreed-upon interest. Civil Code, Articles 1644-1646, Laws of P.R. Ann., Tit. 31 §§ 4571-4573. A loan agreement should contain, among other things, a provision as to how and when the debt shall be considered "paid". That way, the debtor is obliged to return the loaned item, as agreed-upon, and the creditor is limited to wait for the expiration of the term in order to receive the loaned item. *See Vélez Torres*, *supra*, at 453 and 455.

As far as payment of the obligations are concerned, a creditor has the right to demand full payment and cannot be forced to accept partial payments. Civil Code, Article 1123, Laws of P.R. Ann., Tit. 31 § 3171. This right preserves the integrity of the debt, which, in turn, highlights the fact that an

CIVIL 15-2798CCC                    13

obligation will not be deemed extinguished until the totality of the debt has been repaid. Civil Code, Article 1111, Laws of P.R. Ann., Tit. 31 § 3161.

According to the uncontested facts in the case at bar, the Defendants, including Paonessa-López, are obliged under the Financing Agreements, under which certain credit facilities were provided to the Defendants, which are duly endorsed to Bautista. The principal amounts due under the Financing Agreements are further evidenced by two promissory notes issued by F&A Investment duly endorsed to Bautista: (a) Note A in the amount of $4,203,888.72; and (b) Note B in the amount of $674,339.63. The Financing Agreements are secured by, among other things, first priority and perfected mortgage notes and mortgages deeds Real Property 28,146, as earlier described. Additionally, Paonessa-López executed a Continuing and Unlimited Guarantee, and obliged himself to jointly and severally guarantee the payment of all the obligations of F&A Investment under the Financing Agreements.

Defendants have defaulted on its obligations under the Financing Agreements, failing to pay the amounts due therein under its terms, and have failed to cure the existing and continuing defaults on the same. To the extent amounts owed are due and payable, the Court orders its payment to the Plaintiff.

**IV.   CONCLUSION**

Because there is no real controversy regarding the material facts of the case, and having reviewed the dispositive motion filed by Bautista and the

CIVIL 15-2798CCC 14

accompanying documents, Bautista's Motion for Summary Judgment (**d.e. 30**) is GRANTED.[1]  Judgment shall be entered accordingly.

SO ORDERED.

At San Juan, Puerto Rico, on August 16, 2017.

S/CARMEN CONSUELO CEREZO
United States District Judge

---

[1] Bautista's Motions Reiterating Request for Entry of Judgment (**d.e. 31 and d.e. 41**) are MOOT.